PH C

**RECEIVED**

JAN - 7 2019 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT, EASTERN DIVISION

| | | |
|---|---|---|
| **ROSEE TORRES & NOEL TORRES,** | ) | |
| | ) | |
| **Plaintiffs** | ) | **NO.** |
| -VS- | ) | |
| | ) | **DISCRIMINATION & MORTGAGE FRAUD** |
| **JUDICIAL SALES CORPORATION, MR CAPITAL** | ) | |
| **GROUP, LLC, WELLS FARGO BANK, N.A. a Calif.** | ) | **ADDENDUM: FIVE MILLION DOLLARS** |
| **Corp., WELLS FARGO HOME MORTGAGE, an Iowa** | ) | **($5,000,000)** |
| **& Calif. Corp., MANLEY DEAS & KOCHALSKI, LLC,** | ) | |
| **Ohio Corp., JOEL KNOSHER & EDWARD PETERKA,** | ) | |
| **Ind. & Agents of WELLS FARGO BANK & WELLS** | ) | 1:19-cv-00112 |
| **FARGO HOME MORTGAGE,** | ) | Judge Andrea R. Wood |
| ` **Defendants** | ) | Magistrate Judge Sheila M. Finnegan |

## COMPLAINT

` NOW COMES the plaintiffs, **Rosee Torres and Noel Torres ("Torres"),** pro se, and complain against Defendants and each of them, **Judicial Sales Corporation, MR Capital Group, LLC, Wells Fargo Bank, N.A., ("Wells Fargo")** a California Corporation, **Wells Fargo Home Mortgage ("Wells Fargo"), an Iowa Corporation, Manley Deas & Kochalski ("Manley Deas"),** an Ohio Corporation, **Joel Knosher ("Knosher")** and **Edward Peterka ("Peterka")**, and allege:

### COUNT 1 – DIVERSITY JURISDICTION

1. This Court has diversity jurisdiction under 28 U.S.C., Sec. 1332: (a) the defendant, **Wells Fargo Bank, N.A.**, a California corporation; (b) **Wells Fargo Home Mortgage**, an Iowa & California corporation; (c) **Manley Deas & Kochalski, LLC**, an Ohio corporation; (d) **Judicial Sales Corporation a/k/a Intercounty Sales Corp.**, an Illinois Corporation, unauthorized and involuntarily dissolved 08-10-2012, ID# 62741821; (e) It is unknown as to agents **Knosher and Peterka**, who are employees/agents of **Manley Deas & Kochalski, LLC.** (f) Due Process Clause of 14th Amendment; **28 U.S.C., Sec., 1331**; subject matter/civil rights, mortgage fraud. **28 U.S.C., Sec. 1332**, money laundering using Hispanic names & countries, **28 U.S.C., Sec. 1957**.

2. Plaintiff **Torres** are American born citizens and Illinois residents, and the property at issue is located in Illinois.

3. The amount in controversy is over $75,000.

**COUNT 11 – FRAUD**

4.   **Torres** re-allege and incorporate paragraphs 1 through 3 of Count 1 as Paragraphs 1-3 of this Count 11 as though fully set forth herein.

5.   That on the 4th of January, 2019, defendant, Judicial Sales Corporation auctioned and sold the residential real estate located at **3546 West Beach Avenue**, Chicago, IL 60651 ("property") to **MR Capital  Group** pursuant to the direction of defendants and each of them, **Wells Fargo Bank, N. A.,** d/b/a and a/k/a **Wells Fargo Home Mortgage**, and their attorneys, **Manley Deas & Kochalski, Knosher** and **Peterka** in a conspiracy and scheme to defraud **Torres of** the property because of race, color, ethnicity, age and gender.  **(EX. 1)** ⟨ *1-A* ⁓ *1-B*⟩

6.   That the above is based on a  summary judgment entered by the Circuit Court of Cook County, Illinois by Judge William Sullivan on February 26, 2018 regarding case no. 16 CH 05738, which **Torres** allege as fraudulent, as they have no mortgage with **Wells Fargo** and NEVER had a mortgage with **Wells Fargo**. **Torres** were denied discovery and a jury trial, just a private hearing.

7.   That since the February 2018 summary judgment, **Wells Fargo** has been in direct contact with **Rosee Torres** by U.S. mail and telephone**,** despite **Wells Fargo** having counsel, providing **Torres** with information which was not available   during chancery, bankruptcy or appeal, as neither discovery or jury trial  was granted, and **Torres'** former attorneys who retained the property records from prior legal work were deceased and records were not readily available.

8.   That defendants, **Wells Fargo** and their attorneys, **Manley Deas, Knosher and Peterka,** are fraudulently attempting collection on a 2004 defunct World Savings note which was settled by Release on November 2004   **(EX. 2, EX. 3)**, which **Wells Fargo** unlawfully and fraudulently transferred blank, un-dated, un-signed, robo-signed  forgeries and blank forms  to create and fabricate a new fake sub-prime, predatory loan for fictitious dates of February 7 or 8, 2007 mortgage through ID theft violating Federal Trade Commission, forgeries, altering documents, and a subsequent fabricated foreclosure: **(EX.4:A ⁓ 4 D)**

9.   As to **Wells Fargo's** 2007 fictitious claim, **Torres** cancelled the original application for the purchase of re-hab properties  at 3542 and 3550 West Beach Avenue, Chicago, IL. **(EX. 5)**

10. As to  **Wells Fargo's** 2007 **fictitious** claim on a fabricated, sub-prime predatory  loan**,**

-2-

World Savings **DENIED Torres'** loan application(s) on February 21, 2007, destroyed all documents and notified **Torres'** attorneys on April 12, 2007 of the denial, promising to place **Torres'** payments into an IRA account to be collected upon retirement. **(EX. 6, EX. 7)(7 A)**

11. World Savings, prior to transferring **Torres'** records to Wachovia Mortgage, recorded a Satisfaction with the Cook County Recorder of Deeds on March 21, 2007, indicating property PAID IN FULL, there is no mortgage. **(EX. 8)** <u>**Rosee Torres has 100% equity, Wells Fargo has ZERO equity in the property.**</u>    **Wells Fargo** is an unsecured creditor<u>.</u>

12. The U. S. District Court of California, San Jose Division, entered a judgment and dismissal with prejudice on May 17, 2011 against Wachovia Mortgage in which **Wells Fargo** was a co-defendant, Case No. 5:09-md-02015-jf. **Rosee Torres** was a member of said class action. **(EX. 9, EX. 10)** Defendants do not honor judgment or dismissal and settlement.

13. Although **Wells Fargo** had access to confidential records of World Savings and Wachovia Mortgage as early as 2002, according to **Wells Fargo**, they did not assume confidential records until 2010 when granted by the Office of Comptroller & Currency.

14. **Wells Fargo** proceeded to illegally and fraudulently open fifteen (15) or more unauthorized accounts and illegally collecting, diverting and converting the funds back to themselves, their agents and employees in **Torres'** name without **Torres** knowledge and consent:

0483107462, 708/048310762, 011307961, 27028794, 027028794, 0027028794.

4528888, 04528888, 004528888, 45206356, 045206356, 0045206356, 43197462,

04397462, 004397462, 708/043107462, 512/0045206356 plus unknown accounts.

15. **Defendants** and each of them have unjustly and fraudulently enriched itself.

16. **Wells Fargo**, co-defendants and the trial court refused to honor (a) World Savings-**Torres'** November 15, 2004 Release; (b) **Torres'** February 8, 2007 Cancellation; (c ) World Savings DENIAL letter to **Torres** of loan and mortgage on February 21, 2007 re separate property; (d) World Savings DENIAL of **Torres'** application for loan and mortgage on separate property in a FAX letter to **Torres'** attorneys on April 12, 2007 before fraudulently switched to represent

property at issue; (e ) National Mortgage Settlement in 2010 by Department of Justice; (f) the U. S. District Court of California's judgment and dismissal of case on May 17, 2011.

17.    After the February 26, 2018 summary judgment, **Wells Fargo** entered into a Consent Agreement in which **Torres** is a party,  with Consumer Financial Protection Bureau on April 20, 2018 as to fraudulent misconduct and misrepresentations***: In the Matter of Wells Fargo Bank, N.A.,*** Case No. 2018-BCFP-0001. Defendants do not honor Consent Agreement.

18.    After the February 26, 2018 summary judgment, **Wells Fargo** entered into a Consent Agreement in which **Torres** is a party, with the Office of the Comptroller & Currency on April 20, 2018 as to fraudulent misconduct and misrepresentations***: In re the Matter of Wells Fargo Bank***, ***N.A.,*** Case No. AA-EC-2016 & 2018-026. Defendant do not honor Consent Agreement.

**19.**    After the February 26, 2018 summary judgment and appeal, **Wells Fargo** and  Illinois Attorney General entered into a Consent Agreement on December 28, 2018 as to fraudulent misconduct and misrepresentations. **(EX. 11**) Defendants do not honor consent agreement.

**20.**    Neither  **Wells Fargo** nor its co-defendants, **Judicial Sales Corporation, Manley Deas & Kochalski, Messrs Knosher and Peterka,** have a lien or contract with **Torres,** no assignment, no endorsement and no allonge from predecessors, Wachovia Mortgage or World Savings. **Wells Fargo** has no security interest, mortgage voidable, unsecured. Sec, 506(d) of Bankruptcy code.

21.    The fabricated foreclosure and illegal sale of property is retaliation against **Torres** for reporting their misconduct, misrepresentations and fraud to various federal  agencies, particularly  as to defendants' conspiracy scheme to defraud and rip off not only plaintiffs, but also the federal government agencies of millions of dollars by presenting each of the fifteen (15)+ unauthorized fake accounts/mortgages, fabricated foreclosure and sham summary judgment for $309,744 to further unjustly enrich themselves, violating Bank Fraud Act. **18 U.S.C., Sec. 1344**.

22.    Judicial Sales Corporation had written notice of the above information weeks prior to the January 4, 2019  auction and sale to defendant, **MR Capital Group, LLC.**

23. **Torres** were required to file bankruptcy on May 03, 2018, and were discharged on July 31, 2018,  Case No. 18-13068. The fabricated mortgage  is unsecured per Sec. 506(d) of Bankruptcy Code. Case  on appeal pending before the Seventh Circuit, No. 18-3686, Supreme Court due in February 2019.                    -4-

24. Defendants and each of them committed a fraud and swindle in sale of property based on fabricated, unsecured mortgage. **18 U,S,C,, Sec. 1341. Wells Fargo** has history of fabricating foreclosures, altering mortgages, structural systematic racism **(EX. 11, 12,13,14)**

25. Defendants and each of them committed a fraud and intentional and misrepresent-tation as to ownership and mortgage of property in violation of the Dodd-Frank, Title XIV Mortgage Reform and Anti Predatory Lending Act, committing bank fraud. **18 U.S.C., Sec. 1344**.

26. Defendants and each of them are in violation of **Fed. Rules 60, 60B** in the auction and sale of the property at issue through fraud, perjury, misconduct, and misrepresentations, which Act allows relief from judgment and sale. The mortgage and foreclosure are void.

27. As a direct and proximate result of the above, **Torres** sustained irreparable harm and financial damages, loss of property due to race, color, incorrect national origin, ethnicity, gender and age, loss of sale of property, suffering great mental anguish and emotional distress.

WHEREFORE, **Rosee Torres and Noel Torres**, pray exemplary judgment from defendants and each of them for **FIVE MILLION ($5,000,000) DOLLARS** and relief from judgment and sale.

### COUNT 111 – CIVIL RIGHTS ACT OF 1964

28. **Torres** re-allege and incorporate paragraphs 1-3 of Count 1 and paragraphs 4- 27 of Count 11 as through fully set forth herein.

29. Defendants and each of them have deprived **Torres** of their property through the use of interstate commerce (U. S. mail and telephone), targeting **Torres** because of their race, color, incorrect classification as to national origin, and ethnicity, in violation of the **Civil Rights Act of l964, Title 42, Ch. 21 and 42 U.S.C., Sec. 2000a; 42 U.S.C. Sec. 1981 & 1983, 13th Amendment to U. S. Constitution**. **Torres** are of Hispanic-Afro American heritage which **Wells Fargo** explained to **Torres** would effect the purchase and sale of other housing in the newly gentrified area based on **Wells Fargo** and its predecessors' research of urban areas as Chicago.

30. Defendants and each of them have deprived **Torres** of their property in violation of the Fair Housing Act (FHA) and HUD whereby federally funded programs are involved, and in violation of **Title VI of the Act**.; **Fair Housing Act, 42 U.S.C., 3501-3519 *et seq.***

31. Defendants and each of them have deprived **Torres** of their property in a conspiracy

Scheme to interfere with their civil rights, including prohibiting the purchase and sale to non-whites and non-minorities including females which is applicable to **Rosee Torres**, the elderly applicable to both **Torres**. **42 U.S.C., Sec. 1985**; **18 U.S.C., Sec. 1349.**

32.  Defendants and each of them deprived **Torres** of property under the color of Law, thru corrrupt assembly-line  foreclosures & sham sales misusing judiciary. **18 U.S.C., Sec. 242.**

33.  Defendants and each of them deprived **Torres** of the property  in a conspiracy against the rights of citizens, falsely accusing and misrepresenting **Torres** of being undocumented and not citizens and not entitled to loans or property in money laundering scheme even threatening **Torres w**ith deportation, arrest, eviction, and arson. **28 U.S.C., Sec. 1957**. **Wells Fargo** further falsely misrepresented that the fault of the foreclosure was due to the fact that **Torres** did not speak English and the fault lie with **Torres'** and  interpreter at a closing in California, when **Torres** have never been in California, never been to a closing on note and property at issue with **Wells Fargo** or its predecessors,  and as American born citizens, English is their primary language.

34.  As a direct and proximate result of the above, **Torres** lost the sale of the property  to  a female minority and was required to return $20,000 earnest money which financially damaged **Torres,** were deprived of property due to race, color, ethnicity, incorrect national origin, gender and age**,** lost IRA retirement funds deposited with **Wells Fargo,** all in excess of the fabricated summary judgment, and suffered great mental anguish and emotional distress.

WHEREFORE**, Rosee Torres and Noel Torres,** pray judgment from defendants and each of them in the sum of **FIVE MILLION ($5,000,000) DOLLARS** and relief from the fabricated, fraudulent judgment and sale under Rule 60, 60B.

### COUNTY IV – CIVIL RIGHTS ACT OF 1968

35.  **Torres** re-allege and incorporate Paragraphs 1 – 3 of Count 1, paragraphs 4 – 27 of Count 11 and Paragraphs 28 – 34 of Count 111 as though fully set forth herein.

36.  Defendants and each of them deprived Torres of the property by violating the Civil Rights Act of 1968, also known as the Fair Housing Act and follow up of the 1964 Civil Rights Act, by targeting **Torres** who are elderly, of Hispanic Afro-American descent & Noel disabled.    The Act and Congress protects the elder under the **Housing for Older Persons Act of 1995**, also

-6-

prohibits the discrimination in the sale, rental and financing of dwellings based on race, color, sex or national origin – all of which defendants and each of them violated in depriving **Torres'** of the property at issue.     **42 U.S.C., Sec. 3501-3619** *et seq;*

37.     That as a direct and proximate result of the above, **T**orres lost the sale of their property due to race, color, incorrect national origin, ethnicity,  gender and age, lost IRA retirement account funds deposited with **Wells Fargo**, financial losses in excess of the fabricated judgment and suffered great mental anguish and emotional stress.

WHEREFORE**, Rosee Torres and Noel Torres** pray judgment from the defendants and each of them in the sum of **FIVE MILLION ($5,000,000) DOLLARS** and relief from fabricated, fraudulent judgment.

### COUNT V – WELLS FARGO LACK STANDING TO FORECLOSE OR SELL

38.     **Torres** re-allege and incorporate paragraphs 1 – 3 of Count 1, paragraphs 4 – 27 of Count 11,  paragraphs  28 – 34 of Count 111 and paragraphs 35 – 37 of Count IV as though fully set forth herein.

39.     **Wells Fargo** is a mortgage servicer as was its predecessor, Wachovia Mortgage and World Savings, and is not  holder of any original note since it was destroyed when **Torre**s loan application was cancelled, then denied by World Savings.  **Wells Fargo** lacks standing to foreclose or   authorize auction or sell property to or by **Manley Deas, Knosher, Peterka** and **MR Capitol Group. Mortgage Service Act, 12 U.S.C., Sec. 2605; UCC, Sec. 309 & 418(d); 28 U.S.C., Sec. 1957, 735 ILCS 5/15-1506.**

40.   **Wells Fargo**  lacks standing to foreclose or authorize sale of property  since it's false and fraudulent claim is unsecured, has **ZERO equity in the property, which co-defendants Judicial Sales Corporation, MR Capitol Group**, and attorneys-agents **Knosher** and **Peterka** knew or should have known, with no loss mitigation plan as mortgage servicer. **15 U.S.C., Sec. 1639(a).**

41.   That as a direct and proximate result of the above misconduct and constructive fraud, **T**orres were deprived of their property due to their race, color, incorrect national origin, ethnicity, gender and age,  and sustained financial losses in excess of the summary judgment

through loss of sale of the property, loss of IRA funds concerted and diverted back to **Wells Fargo**, suffering great mental anguish and emotional distress.

WHEREFORE**, Rosee Torres and Noel Torres**, pray judgment from the defendants and each of them in the amount of **FIVE MILLION ($5,000,000) DOLLARS** and relief from the fraudulent judgment and sale under Rule 60, 60B.

**COUNT VI – STATUTE OF LIMITATIONS**

42. **Torres** re-allege and incorporate paragraphs 1 – 3 of Count 1, paragraphs 4 – 27, of Count 11, paragraphs 28 – 34 of Count 111, and paragraphs 35 – 37 of Count IV as though fully set forth herein.

43.  Under federal law and the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), the statute of limitations for filing claims is six (6) years. **Pub. . No. 101-73, 103 Stat. 183.** If  claim is not filed in six years, the claim is barred, **28 U.S.C., Sec. 2501**. **Wells Fargo** and its co-defendants attorney/agents filed a foreclosure in 2016 on a 2004 cancelled and denied mortgage note application  altered to represent a fake February 2007 note,  beyond the six year statute of limitations, in violation of FIRREA.   The foreclosure and summary judgment is therefore void.

44.  Under Illinois state law, the statute of limitations is ten (10) years. **Wells Fargo** and its co-defendants attorneys and agents filed a foreclosure in 2016 on a 2004 cancelled and denied mortgage note application altered to represent a fake 2007 note, beyond the ten (10) year statute of limitations.  The foreclosure and summary judgment is void.

**45.** That as a direct and proximate result of the above misconduct and fraud, **Torres** were deprived of  property due to race, color, incorrect national origin, ethnicity,  gender and age, suffering irreparable harm and damages in the lost sale of property, loss of IRA retirement account with defendant bank, great mental anguish and emotional distress.

46. **Torres** seeks relief from the foreclosure and summary judgment under Section 60, 60B.

WHEREFORE, **Rosee Torres and Noel Torres**, pray judgment from the defendants and each of them in the amount **of FIVE MILLION ($5,000,000) DOLLARS**  and relief from judgment and sale under Rule 60, 60B.                    -8-

## COUNT VII - FAIR DEBT PRACTICES COLLECTION ACT

47.    **Torres** re-allege and incorporate paragraphs 1 – 3 of Count 1, paragraphs 4 – 27 of Count ll, paragraphs 28 – 34 of Count 111, paragraphs 35 – 37 of Count IV, paragraphs 38 – 41 of Count V, paragraphs 42 – 46 of Count VI as though fully set out herein.

48.   Defendants and each of their fraudulent scheme and conspiracy to collect a fake debt and deprive **Torres** of property due to race, color, incorrect national origin, gender and age through a fraudulent foreclosure and sale of property  for which they have no standing, no title, no lien, no contract is in violation of the Fair Debts Practices Collection Act.  **15 U.S.C., Sec. 1602 et seq.**

49.   In the process of the corrupt and misconduct of the above,  defendants and each of them damaged **Torres'** credit, in violation of the Equal Credit Opportunity Act. **15 U.S.C., Sec. 1691.**

50.   Defendants and each of them employed unconscious tactics as threats of arrests, deportation,   eviction, arson from hi-jacking property insurance from 2015-2018, fabricated foreclosure and sale through misuse of the judicial system, and intimidation in violation of the Act.

51.   That as a direct and proximate result of the Defendants and each of them**, Torres** were deprived of their property due to race, color, ethnicity,  incorrect national origin**,**  gender and age, lost the sale of property having to return earnest money, and sustained irreparable harm and damages, great mental anguish and emotional distress.

WHEREFORE, **Rosee Torres and Noel Torres**, pray judgment from the defendants and each of them in the amount of **FIVE MILLION ($5,000,000) DOLLARS** and relief from judgment and sale under Rule 60, 60B.

## COUNT VIII - VIOLATIONS OF ILLINOIS FORECLOSURE LAWS

52.  Torres  re-allege and incorporate paragraphs 1-3 of Count I, paragraphs 4 – 27 of Count ll, paragraphs 28 – 34 of Count lll, paragraphs 35 – 37 of Count IV, paragraphs 38 – 41 of Count V, paragraphs 42 -  46 of Count VI, paragraphs 47 – 51 of Count Vll, as though fully set forth herein.

53. The fabricated foreclosure, summary judgment and auction/sale is based on the same altered, fabricated note for which a judgment and dismissal with prejudice was entered against Wachovia Mortgage, in which Wells Fargo was a party defendant and **Rosee Torres** was a member: In re Wachovia Corp., "Pick-A-Payment Mortgage Marketing & Sales Practice Litigation, in the U. S. District Court of California, San Jose Division, no. 5:09-md-02015-jf, entered May 17, 2017. **(EX. 9, EX. 10)**

**54.** **Res Judicata** is applicable as to the defendants' foreclosure, summary judgment.

55. Defendants and each of them waived their rights to any payment from summary judgment, sale or otherwise. **735 ILCS 5/15-1602**.

56. The foreclosure complaint is defective under Illinois law as it fails to give a default date as it obtained a fraudulent summary judgment for the full amount of a fabricated sub-prime predatory altered note from 2004 and 2007 on one of its fifteen (15) unauthorized accounts opened in **Torres'** name without **Torres** knowledge or consent. **735 ILCS 5/25-1502.5(c ).**

**57.** The foreclosure complaint is defective under Illinois law as it filed to provide a Grace period. **735 ILCS 5/15-1502.5.**

**58.** The foreclosure complaint is defective under Illinois law as it failed to attach a Homeowners' Notice. **735 ILCS 5/15-1504.5.**

**59.** The foreclosure complaint is defective under Illinois law as it failed to establish ownership rights, having no original contract or note (original destroyed when loan application cancelled and destroyed in 2007), no lien, no assignment, endorsement or allonge from predecessor banks. **735 ILCS 5/15-1506.**

**60.** The foreclosure complaint is defective under Illinois Law, particularly Supreme Court Rule 137 as to attorneys **Knosher** and **Peterka** in behalf of **Manley Deas & Kochalski, LLC,** for negligence and intentional misconduct and misrepresentation, failing to adequately research or investigation, incompetence, and perjury in misusing the judicial system by violating both Illinois and federal False Claims Acts in obtaining fabricated foreclosure, summary judgment and sale of **Torres** property. **31 U.S.C., Sec. 3729-3733; 740 ILCS 175/1.**

**61.** The foreclosure complaint is defective and void under the Illinois Fraud and Deceptive Practices Act, including **Noel Torres**, a non-party to any note, contract or mortgage due to a waiver, but added as a party to harass and intimidate in the fabricated foreclosure and sale.

**62.** That as a direct and proximate result of the above, **Torres** sustained irreparable harm and damages when deprived of the property due to race, color, incorrect national origin, ethnicity, gender and age, loss to sale of property and return of earnest money due to above acts, suffering great mental anguish and emotional distress.

WHEREFORE**, Rosee Torres and Noel Torres**, pray judgment from the defendants and each of them, in the amount of FIVE MILLION ($5,000,000) DOLLARS and relief from judgment and sale under Rule 60, 60B.

## COUNT IX – TRUTH IN LENDING  ACT, FAILURE TO DISCLOSE

62.     **Torres** re-allege and incorporate paragraphs 1 – 3 of Count 1, paragraphs 4 – 27 of Count II, paragraphs 28 – 34 of Count III, paragraphs 35 – 37 of Count IV, paragraphs 38 – 41 of Count V, paragraphs 42 – 46 of Count VI, paragraphs 47 – 51 of Count VII, paragraphs 52 – 61 of Count VIII  as though fully set forth herein.

63.     **Wells Fargo,** in its conspiracy with co-defendants to dep**rive Torres** of property violated the Truth in Lending Act in obtaining a fraudulent judgment from fabricated, sub-prime predatory mortgage while intentionally failing  to disclose (a) the exact amount and terms of the fabricated mortgage;  (b)  the interest rate of the fabricated mortgage;  (c ) to which of the fabricated fifteen (15) fabricated accounts the fabricated foreclosure and judgment applies;  (d) the fact that both **Torres** were not employed at the time the fake mortgage(s) were made and therefore did not disclose the ability or inability of **Torre**s to pay back the fabricated mortgage(s) and sham sale. **Title 15, Ch. 41 – 15 U.S.C., Sec. 1601**.

64. That as a direct and proximate result thereof, Torres were irreparably harmed and damaged by defendants and each of them depriving them of property due to race, color, ethnicity, incorrect national origin,   gender and age, causing  them to suffer great mental anguish and emotional distress.

WHEREFORE, **Rosee Torres and Noel Torres**, pray judgment from defendants and each of them in the amount of **FIVE MILLION ($5,000,000) DOLLARS** and relief from fabricated judgment and sale under Rule 60, 60B.

## COUNT X – COLLATERAL ESTOPPEL & *RES JUDICATA* IN FRAUD CASES

65.        **Torres** re-allege and incorporate paragraphs 1 – 3,  paragraphs 4 – 27 of Count II, paragraphs 28 – 34 of Count III, paragraphs 35 – 37 of Count IV, paragraphs 38 – 41 of Count V, paragraphs 42 – 46 of Count VI, paragraphs 47 – 51 of Count VII, paragraphs 52 – 61 of Count VIII, paragraphs 62 – 64 of Count IX as though fully set forth herein.

66.        Collateral estoppel applies to fraud cases, including the fifteen (15) unauthorized accounts opened in Torres' name without their knowledge or consent, and in which the matter at issue is one of those fifteen accounts.  **Federal Rule 60**..

67.        Collateral estoppel applies to fraud cases in which newly discovered evidence which by due diligence could not have been discovered in time to move for a new hearing or trial under 59(b) as in this matter.  **Federal 60(b)(2).**

68.        Collateral estoppel applies to fraud cases whether determined intrinsic or extrinsic, misrepresentation and other misconduct by the adverse party(ies) as alleged as to the defendants and each of them herein.  **Fed. Rule 60(b)(3).**

69.        Collateral estoppel applies to fraud cases when a judgment has been satisfied, released or discharged, or a prior judgment  on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.  **Federal Rule 60(b)(5).**  The rule applies to **Torres** case as the judgment was settled by a Release and settlement on November 15, 2004, National Mortgage Settlement Agreement in 2010, a judgment by the U. S. District Court of California on May 17, 2011, Consent Agreement with the Illinois Attorney General, Consent Agreements with the Consumer Financial Protection Bureau on April 20, 2018, Consent Agreement with the Office of Comptroller and Currency on April 20, 2018, and Consent Agreement/Judgment through Illinois Attorney general and 50 states on December 28, 2018.    *Res judicata* also applies to the defendants' fabricated mortgage, foreclosure for which a summary judgment and sham sale was obtained.

70. Collateral estoppel applies to fraud cases for any other reason justifying relief from the operation of a judgment. **Federal Rule 60(b)(6).** This applies to the fraudulent mortgage by Wells Fargo based on fabrication, altering prior documents, switching signed and in initialed pages to blank, 2004 undated, in-executed World Savings pages to create and fabricate a new 2007 mortgage, forgery, ID theft, use of robo-signatures, discrimination as to race, color, ethnicity, incorrect national origin, gender and age, targeting Hispanics and Afro-Americans and Torres who meets the classifications.

## COUNT Xl – INJUNCTION AGAINST FRAUD

65. **Torres** re-allege and incorporate paragraphs 1 – 3 of Count 1, paragraphs 4 – 27 of Count 11, paragraphs 28 – 34 of Count lll, paragraphs 35 – 37 of Count IV, paragraphs 38 – 41 of Count V, paragraphs 42 – 46 of Count VI, paragraphs 47 – 51 of Count VII, paragraphs 52 – 61 of Count Vlll, and paragraphs 62 – 64 of Count IX as though same were fully set forth herein.

66. Defendants and each of the, in a conspiracy to defraud not only **Torres** bit the United States government in the fake, fabricated mortgage, foreclosure, and sham sale, violated the banking law under Section 3322(d).

67. The District Court has jurisdiction to restrain defendants and each of them from transferring title to or disposing of **Torres'** property by injunction. **18 U.S.C., Sec. 1345**.

WHEREFORE**, Rosee Torres and Noel Torres**, pray judgment from the defendants and each of them, in addition to FIVE MILLION ($5,000,000) DOLLARS in damages, an injunction restraining defendants and each of them from transferring title and property obtained by a fabricated, fraudulent mortgage, foreclosure, judgment and sham sale under rule 60, 60B.

Date: January 07, 2019

_____
Rosee Torres

_____
Noel Torres

99500
ROSEE TORRES AND NOEL TORRES
Plaintiffs – Pro Se
3546 West Beach Avenue
Chicago, IL 60651
1-773-384=9122                                              -13-

## **VERIFICATION**

The Complaint herein was by them subscribed, and the contents therein are correct and

true to the best of their knowledge, belief and information.

Date:  January 07, 2019

Rosee Torres

Noel Torres

99500
ROSEE TORRES & NOEL TORRES
Plaintiffs – Pro Se
3546 West Beach Avenue
Chicago, IL  60651
1-773-384-9122                                    -14-

1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT — CHANCERY DIVISION

WELLS FARGO BANK, N.A.

                        Plaintiff,)    16 CH 5738

       vs.               )    Calendar 60

ROSEE TORRES; NOEL TORRES     )

                      Defendants,)

## NOTICE OF SALE

    NOTICE IS HEREBY GIVEN that pursuant to a Judgment of Foreclosure and Sale entered in the above entitled cause on February 26, 2018 Intercounty Judicial Sales Corporation ((312) 444-1122) will on Friday, January 4, 2019 at the hour of 11 a.m. in their office at 120 West Madison Street, Suite 718A, Chicago, Illinois, sell at public auction to the highest bidder for cash, as set forth below, the following described mortgaged real estate:

    Lot 30 in Block 6 in Van Schaak & Herricks Subdivision of the Northwest 1/4 of the Northeast 1/4 of Section 2, Township 39 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois. Commonly known as 3546 WEST BEACH AVENUE, CHICAGO, IL 60651. P.I.N. 16-02-208-030-0000.

    The property is improved with a single family residence. and will NOT be open for inspection. Sale terms: 10% down by certified funds, balance, by certified funds, within 24 hours. The subject property is subject to real estate taxes or special assessments and is offered for sale without any representation as to quality of title or recourse to Plaintiff.

    For information call Sales Department at Plaintiff's Attorney, Manley Deas Kochalski, LLC, One East Wacker Drive, Chicago, Illinois 60601. (614) 220-5611.

**EX. 1**

Rosee Torres
3546 West Beach Avenue
Chicago, IL 60651

Page 2 →

## OFFICE OF THE ILLINOIS SECRETARY OF STATE

### JESSE WHITE
#### SECRETARY OF STATE

## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **File Number** | 62741821 | | |
| **Entity Name** | INTERCOUNTY SALES CORPORATION | | |
| **Status** | DISSOLVED | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 03/20/2003 | **State** | ILLINOIS |
| **Agent Name** | ANDREW D SCHUSTEFF | **Agent Change Date** | 03/20/2003 |
| **Agent Street Address** | 120 W MADISON ST STE 718 | **President Name & Address** | ANDREW D SCHUSTEFF 120 W MADISON CHICAGO 60602 |
| **Agent City** | CHICAGO | **Secretary Name & Address** | INVOLUNTARY DISSOLUTION 08 10 12 |
| **Agent Zip** | 60602 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 00/00/0000 | **For Year** | 2012 |

Return to the Search Screen

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EX. 1A-pg.2



# OFFICE OF THE ILLINOIS SECRETARY OF STATE
## JESSE WHITE
### SECRETARY OF STATE

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for MR Capital Group, LLC, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE



Andrew Smith
Manager

**MR Capital Group, LLC**

515-230-0992

1005 Lake St   Addison, IL 60101

andrew.mrcapital@gmail.com

Business
← Card

EX 1-B

**2**

behind or next to, the De[...] in the streets or roads in front of

(viii) All fixtures that are now or in the future will be on the Described Property or on the Property described in subsection (iii) of this Section;

(viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x) All of the amounts that I pay to Lender under Paragraph 2 below.

IV. **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

## RELEASE

Borrower/Buyer executes this Servicing and "Mortgage Servicing Transfer Disclosure" in our of settlement and Release of all claims, including but not limited to: (i) future and adjustment and reduction of 12% interest to Borrower/Buyer from 2000 to PUZ000, or $28,512 to be applied as down payment in new purchase or refinance, or whatever the there is at new purchase; (ii) credit for FORTY THOUSAND AND NO/00 ($40,000) held by Borrower/Buyer in original mortgagor as down payment; (iii) adjustments in payments to interest and Principal, and all monies applied to Applied Funds and Miscellaneous Funds, including monies applied to Closing costs and taxes — ELEVEN THOUSAND SIX HUNDRED FIFTEEN DOLLARS ($11,615) for a total of $80,157 and representing payment in full, applicable to all future mortgage servicing Transfers.

This settlement is based on Saxon Mortgage's balance of $91,005.89 on its March 2005 Statement attached hereto, and World Savings balance of $80,157 Statement of November 2004, attached hereto. World Savings agrees to record this for a Recorder of Deeds, Chicago Inc.

Borrower/Buyer agrees to provide new purchaser to property at 3946 West Beach Avenue, Chicago, Illinois, said new Borrower/Buyer (D. Birnell) to finance through World Savings under separate and distinct credit and mortgage terms as required by the Lender, correcting the name of [...] documents to new Borrower/Purchaser, rather than the undersigned [...] er or Buyer.

**EX. 2**

[signature] 11-18-04

= Torres

@ 95
C 375

See f.a.

3

FILED - 1

2017 NOV 27 AM 10: 14

CIRCUIT COURT OF COOK

DOROTHY BROWN

## Supplemental Agreement & Attorneys Fees

Rosee Torres agrees that her share of the settlement, $29, 342, executed by Release on November 15, 2004, is to be applied and distributed as follows:

(a) Fifteen Thousand ($15,000) Dollars as Down Payment for application of Mortgage by Rosee Torres for 3550 West Beach Avenue, Chicago, Illinois, in behalf of Rosee Torres, a married woman; and

(b) Fiourteen Thousand ($14,000) Dollars as Down Payment for application of mortgage by Noel Torres for 3542 West Beach Avenue, Chicago, Illinois, in behalf of Noel Torres, a married man.

(c) Balance of settlement to Rosee Torres.

Rosee Torres agrees that all funds collected over and above the aforesaid settlement is to be paid to her attorneys, R, Eugene Pincham and Frederick Cohn as attorneys' fees.

IN CNSIDERATION of this Agreement, World Savings agrees to forgive any and all debts which may be due and owing to World Savings, and its predecessors regarding 3546 West Beach Avenue, Chicago, Illinois: Bancorp, Option One, Standard Bank, Ameriquest, Saxon, Golden Financial, and World Savings; World Savings agrees to place all funds received after the execution of the Release into a retirement account in behalf of Rosee Torres;

Rosee Torres agrees to forego all claims regarding 3546 West Beach Avenue, Chicago, Illinois against Bancorp, Option One, Standard Bank, Ameriquest, Golden Financial and World Savings upon receipt of payment.

Date: ___Jan. 30___ 20_07_      _____
                                          Rosee Torres

SUBSCRIBED AND SWORN TO BEFORE ME
This 30 Day of _Jan_, 20 _07_
_____
Notary Public

"OFFICIAL SEAL"
MARIA T. GAUD
Notary Public, State of Illinois
My Commission Expires April 21, 2007

EX. 3





FILED - 1

2017 NOV 27 AM 9: 16

CIRCUIT COURT
COUNTY IL
CHANCERY DI
_____ CLERK
DOROTHY BROWN

**#MARKET NEWS**

APRIL 16, 2015 / 4:00 PM / 2 YEARS AGO

# U.S. judge finds Wells Fargo breached 2010 mortgage settlement

Dena Aubin

NEW YORK, April 16 (Reuters) - Wells Fargo Bank breached a nationwide 2010 legal settlement involving adjustable-payment mortgages, a federal judge ruled, finding that the bank did not properly evaluate homeowners who applied for help to avoid foreclosures.

In an order on Wednesday, U.S. District Court Judge Richard Seeborg in northern California told Wells to meet with plaintiffs and find a way to remedy its violations, including steps to let some homeowners reapply for loan assistance.

Tom Goyda, spokesman for Wells Fargo, the largest U.S. mortgage lender, said the bank is reviewing the decision and will be working to provide additional information requested.

"We're quite pleased," said Jeffrey Berns, lead counsel for homeowners. "I don't know whether this is going to prevent foreclosures but it is certainly going to open (Wells) up to claims for damages from class members."

The decision is the latest twist in a long-running dispute over the settlement, which resolved complaints about "pick-a-payment loans." Wells inherited a large portfolio of these loans with its 2008 acquisition of Wachovia Corp.

EX. 4



the two-way

# Wells Fargo Admits To Nearly Twice As Many Possible Fake Accounts — 3.5 Million

August 31, 2017 · 1:02 PM ET

  URI BERLINER



This revelation of more potentially unauthorized accounts is likely to ratchet up the congressional and regulatory scrutiny Wells Fargo already faces.

Matt Rourke/AP

Wells Fargo just can't get past its fake account scandal.

On Thursday, the bank acknowledged it had created more bogus customer accounts than previously estimated. An outside review discovered that 1.4 million more

EX. 4  A

Business

# Wells Fargo Settles Fake-Accounts Lawsuit for $480 Million

By Hannah Levitt

May 4, 2018, 3:47 PM CDT

Updated on May 4, 2018, 4:22 PM CDT

Wells Fargo & Co. agreed to pay $480 million to settle a class-action lawsuit in which investors accused the bank of securities fraud related to its fake-account scandal.

The settlement resolves the main class-action suit brought by shareholders targeting the bank's allegedly deficient disclosures related to its sales practices. It had previously set aside reserves for the settlement, according to a regulatory filing Friday. Wells Fargo said in a statement that it denies the allegations in the suit.

"Moving to put this case behind us is in the best interest of our team members, customers, investors and other stakeholders," Chief Executive Officer Tim Sloan said in the statement.

This is the latest cost for Wells Fargo from a consumer banking scandal that arose in September 2016. That issue, in which employees opened as many as 3.5 million bogus accounts, ultimately cost then-CEO John Stumpf his job. The bank still faces a bevy of other lawsuits on related matters.

Last month, the San Francisco-based bank settled with the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau for an unprecedented $1 billion to cover issues in auto lending and mortgages. In February, the Federal Reserve imposed a sanction prohibiting the bank from boosting total assets beyond their level at the end of 2017 until it fixes shortcomings.

The lender said in a filing Friday that "reasonably possible" legal charges could be as high as $2.6 billion beyond reserves as of March 31. This is down from $2.7 billion in the previous quarter.

Wells Fargo executives are set to update analysts and shareholders on financial targets and regulatory matters at an investor day scheduled for May 10.

The shareholder case is Hefler v. Wells Fargo & Co., 3:16-cv-05479, U.S. District Court, Northern District of California (San Francisco).

EX. 4B

# The Bulletin (www.bendbulletin.com)

Published June 15, 2017 at 12:02AM

## Wells Fargo accused of altering home loans



Theodore Bartholow III and Karen Kellett are the attorneys for the lead plaintiffs in a class action lawsuit accusing Wells Fargo of making unauthorized changes to home loans held by customers in bankruptcy. Wells Fargo has been putting through unsolicited loan modifications since at least 2015, lawyers involved with the cases said. The bank denies the claims of the lawsuits. (Brandon Thibodeaux/The New York Times)

Even as Wells Fargo was reeling from a major scandal in its consumer bank last year, officials in the company's mortgage business were putting through unauthorized changes to home loans held by customers in bankruptcy, a new class action and other lawsuits contend.

The changes, which surprised the customers, typically lowered their monthly loan payments, which would seem to benefit borrowers, particularly those in bankruptcy.

But deep in the details was this fact: Wells Fargo's changes would extend the terms of borrowers' loans by decades, meaning they would have monthly payments for far longer and would ultimately owe the bank much more in interest.

Any change to a payment plan for a person in bankruptcy is subject to approval by the court and the other parties involved.

EX. 4 C

$13,182     $50K    **DONATE NOW!**

/component/banners/click/2)

# New Lawsuit Alleges That Wells Fargo Has a Manual for Mass Fabrication of Foreclosure Documents

Monday, 24 March 2014 10:49

*By Yves Smith (/author/itemlist/user/46264), Naked Capitalism (http://www.nakedcapitalism.com/2014/03/new-lawsuit-alleges-wells-manual-mass-fabrication-foreclosure-documents.html? utm_source=feedburner&utm_medium=email&utm_campaign=Feed%3A+NakedCapitalism+%28naked+capitalism%29) | New Analysis*

(/)

5K    10            documents?tmpl=component&print=1)

*Journalism with real independence and integrity is a rare thing. Truthout relies on reader donations - click here to make a tax-deductible contribution and support our work. (https://members.truth-out.org/donate)*

*Also see: As Wells Fargo Is Accused of Fabricating Foreclosure Papers, Will Banks Keep Escaping Prosecution? (http://truth-out.org/news/item/22658-as-wells-fargo-is-accused-of-fabricating-foreclosure-papers-will-banks-keep-escaping-prosecution)*



Recall that some of the most damaging documents released by Edward Snowden were NSA manuals. They discuss in detail how certain abuses are performed and

(Photo: Clint McMahon

5

WORLD SAVINGS BANK FSB

# FIXED RATE MORTGAGE NOTE

## PICK-A-PAYMENT℠ LOAN

AMENDED AND CORRECTED NOTE APPLICATION

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER  0045206356                           DATE  February 7, 2007

BORROWER(S)    ROSEE TORRES, A MARRIED WOMAN   sometimes called 'Borrower' and sometimes simply called 'I' or 'me.'

PROPERTY ADDRESS  3546 W BEACH AVENUE, CHICAGO, IL 60651-2201   Borrower's Address

Purchase of 3542 W Beach Ave., Chicago, IL (#16-02-208-031-0000) $100,000
Purchase of 3558 W Beach Ave., Chicago, IL (#16-02-208-028-0000) $108,000

1. **BORROWER'S PROMISE TO PAY**   (Down Payments $15,000 Each from 11-15-2004 Settlement.

In return for a loan that I have received, I promise to pay U.S. **$206,000.00** called 'Principal' plus interest to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.  Based on Recorded Assignments & Endorsements, pending correction of account number, correct addresses of property, closing and notary to take place in Chicago, Cook County, Illinois on or closing

2. **INTEREST**       All prior Note(s) void or invalid. Closing Date: 02-14-2007.

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of 6.990%. Interest will be charged on the basis of a twelve month year and a thirty day month. Not to Exceed 12%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.  Borrower agrees to pay all insurance & property taxes.

01-30-2007

SD053A 2006-09-2   (14) (709-0421)         FIXED RATE MORTGAGE NOTE   IL
Page 1

LENDER'S USE ONLY

**EX. 5**

(E)   Deferred Interest; Additions to My Unpaid Principal

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest", will be added to my Principal and will accrue interest at the same rate as the Principal.

(F)   Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal balance can never exceed 125% of the Principal originally borrowed, called Principal Balance Cap. If as a result of the addition of deferred interest to my unpaid principal balance the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3.C. and 3.D. above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

(G)   Final Payment Change

On the 10th Payment Change Date my monthly payment will be calculated as described in Section 3.C. above except that the Payment Cap limitation will not apply.

(H)   Notice of Payment Changes

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. I will receive this "Payment Change Notice" before each Payment Change Date.

4.   FAILURE TO MAKE ADJUSTMENTS

If for any reason Lender fails to make an adjustment to the payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's own failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

6.   MAXIMUM LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charges for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

01-30-2007

**(B)   Default**

I will be in default if I do not pay the full amount of each monthly payment on the time it is due ... the amount I owe ... the failure of any of the promises or agreements under this Note ... the Security Instrument ... any statement made to me and which in this Note can was made at a false or misleading ... statement ... **Default on one property does not effect other, re 3542 & 3550 W Beach. Nor does it affect property at 3546 W Beach, Chicago. IL, PAID IN FULL.**

**(C)   Notice of Default**

If I am in default the Lender may send me a written notice called Notice of Default ... by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount plus any other amount due under the Security Instrument. **Borrower does not agree.**

**(D)   No Waiver by Lender**

Even if at a time when I am in default the Lender does not require me to pay immediately in full as described above the Lender will still have the right to do so if I am in default at a later time. **Borrower does not agree to this provision.**

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back ... to the extent ... permitted by applicable law. Those expenses may include, for example, reasonable attorneys fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at my address as **3546 W BEACH AVENUE, CHICAGO, IL  60651-2201**, or at a single alternative address if I give the Lender notice of my alternative address ... may designate only one mailing address at a time for notification purposes. **(Note for 3542 & 3550 W Beach, Chicago, IL)**

Except as permitted above for changes of address any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3.A. above or at a different address if I am given a notice of that different address. **Correct addresses for Borrower and Separate Property of Loan herein.**

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. **There are no other parties obligated on this note other than Posee Torres.**

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid. **Borrower does not agree to waive rights.**

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against loss which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26: **This Note secures only 3542 W Beach & 3550 W Beach, Chgo.**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or any right in the Property is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal law on the date of this Security Instrument. **Borrower does not agree to these provisions.**

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument ... **Borrower does not agree to this.**

01-30-2007

12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal laws and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." [...] **Illinois Mortgage Act applicable to this Note re 3542 W Beach & 3550 W Beach, Chicago, IL.**

13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any of the documents related to this loan called collectively the "Loan Documents" contains an error that was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to reexecute any Loan Documents that are necessary to correct any such errors, and I also agree that I will not hold the Lender responsible for any damages to me which directly result from any such error. **Borrower does not agree to this provision.   01-30-2007**

14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes. **This Note not applicable to 3546 W Beach, Chgo, IL. World Savings agrees to record Satisfaction re above prior to this closing.**

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

01-30-2007

SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN
CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE
PREPAYMENT PROVISION) BEFORE YOU SIGN IT. 3542 West Beach Avenue
Chicago, IL 60651 INDEX # 16-02-208-031-0000

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)          _____
JOSEE TORRES                               Witness
3546 West Beach Avenue
Chicago, IL 60651

SUBSCRIBED AND SWORN TO BEFORE ME
This 30 Day of June ,2004
_____
Notary Public

```
"OFFICIAL SEAL"
MARIA T. GAUD
Notary Public, State of Illinois
My Commission Expires April 21, 2007
```

RETURN:
FREDERICK F. COHN, LTD
R. EUGENE PINCHAM
Attorneys at Law
35 East Wacker Drive
Chicago, IL 60601
(312- 641-0692

Enclosure: Attached Waiver by Noel Torres

IL

BORROWER(S) SPOUSE(S): The undersigned, _____ of the Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any right or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse. _____ West _____

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

Pages 1-15 initialed and dated: _____
Provide correct account number.

BORROWER(S) SPOUSE(S)

_____ _____ (Seal)      not my signature
NOEL TORRES                NON BORROWING SPOUSE

_____ (Seal)
Noel Torres

_____ (Seal)

SUBSCRIBED AND SWORN TO BEFORE ME
This ___ Day of June, 2004 A.A.

_____
Notary Public

"OFFICIAL SEAL"
MARIA T. GAUD
Notary Public, State of Illinois
My Commission Expires April 21, 2007

RETURN:
FREDERICK F. COHN
R. EUGENE PINCHAM
Attorneys at Law
35 East Wacker Drive
Chicago, IL 60601
312-641-0692    INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD008 (2004-03-1)
[AL1 (2004-03-1)]                    Page 15                    IL

6

FILED -1

2017 NOV 27 AM 10: 14

COUNTY, ILLINOIS
CHANCERY DIV.

DOROTHY BROWN          CLERK

February 21 , 2007

Loan Number: 2702879 · · ·
45200336 · ·

Roses Torres
3546 West Beach Avenue
Chicago, IL 60651-2201

Property Addresses:  3542 West Beach, 3550 West Beach, & 3546 West Beach Avenue
Chicago, IL  60651

We received your faxed Cancellation of February 8, 2007 and correspondence of February 11. It has been forwarded to our home office for review by legal counsel.  There may be a delay in response and research due to current, pending 3rd party litigation.

Enclosed is a copy of the Release you signed on November 15, 2004.  Our position is that the Release relieves World and its successors of any obligation or liability as to World Savings prior thereto, including 3542 West Beach and 3550 West Beach, which were never finalized. The matter is closed. All documents were destroyed after 3 months if no action is taken, as a policy.  There is no new application on file.

A copy of the settlement check for $29,421.63 has been sent to your attorney/s as it could not be applied to any new purchases or transactions without your endorsement or new application(s), as the above matters are closed and you were notified that you were ineligible and  did not qualify for new mortgage due to your 2006 income. There are no other existing loans, mortgages, indorsements or assignments. All funds received thereafter will be applied to your IRA or refunded.  You may fax any new information to 1-857-524-6616 or mail to World Savings, P. O. Box 7512, Springfield, Ohio 45501-7512 rather than to the San Antonio, TX or California branches.

To avoid foreclosure, you may be required to continue making monthly payments until all litigation is resolved and/or all documents are transferred to the new financial institution for a decision. However, all over-payments will be adjusted, refunded or placed in an IRA or escrow account. Our research continues. You will be advised  as to whether your account was transferred to Wachovia, Citibank or Wells Fargo during the transitional period.

Thank you for your patience.  Please feel free to contact us if you have any further questions.

Customer Service Department

cc:  Eugene Bigham, Esq.
     Michael B. Cohen, Esq.

**EX. 6**

7

World Savings

## FAX TRANSMISSION COVER PAGE

2016 DEC 28 PM 1:07

| | |
|---|---|
| TO: R. Eugene Pincham<br>Frederick Cohn | FROM: Customer Care & Recovery |
| FAX: 1-312-641-1777 | FAX: 1-800-914-8166 |
| PHONE: 1-312-641-0692 | PHONE: 1-800-642-0257 |

DATE: Thursday, April 12, 2007      PAGES w/cover: 03

RE: 3542 West Beach, 3546 West Beach, 3550 West Beach, Chicago, Illinois

We are in receipt of your Cancellations of April 1, 2007 and February 8, 2007, both reviewed by our legal department. It is determined that all original notes, mortgages assignments and endorsements from prior financial institutions for the above addresses have been destroyed and/or are moot as a result of the Release of November 15, 2004, settlement check and two Cancellations sent to your attorneys, R. Eugene Pincham and Frederick Cohn. Therefore, the case is closed as to all 2003, 2004 and 2007 applications by you and Noel Torres regarding 3542, 3546 and 3550 West Beach Avenue. No new applications or mortgages with the correct addresses are on file as all documents have been transferred to the new institution with corrections: 3542 and 3550 West Beach. You were also advised that your applications were denied as you were not eligible for a mortgage-loan due to your financial status. On January 31, you were also asked to submit new applications with the correct addresses and financial statements meeting minimal standards to qualify for eligibility, with co-signers if your financial status hasn't changed, and you failed to do so within 30 days. The matter was closed. There is no information on any closing which, according to our records, were cancelled by you and your attorneys prior to January 31, 2007 and February 8, 2007. World Savings is acting as a mortgage servicer and collection agent for the new institution, which appears to be Citibank. Meanwhile, all payments of $1,206.27 each month will be applied to your account 27028794 as "Miscellaneous Application Payment" until this matter is resolved. The new facility will contact you directly upon receiving and reviewing all records from the transfer and any over-payments made by you will be credited and returned or placed into an IRA account as you requested. We apologize for the misunderstanding and inconvenience caused and thank you for your patience as a valued customer.

This fax and attachments are intended solely for the use of the addressee. It may contain information that is privileged, confidential and/or exempt from disclosure under applicable laws. If received in error, please immediately notify the sender. Unless expressly stated, this fax does not convey company identities or contracts and an attached file is not to be construed as a signature.

**EX. 7**

the amount of credit previously provided to you. Your home is the security for this new transaction.

...er federal law to cancel this new transaction, without cost, within three business days from whichever of the following events

... new transaction, which is February 7, 2007; or

... received your new Truth-in-Lending disclosures; or

... you received this notice of your right to cancel.

**FILED - 1**

**2019 NOV 27  AM 10: 14**

CIRCUIT CO...
COUNTY
CHANCERY D...

DOROTHY BROWN

...cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days
...we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not...
...increase of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

... may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the
...ney at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

... owner of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

## HOW TO CANCEL

...ou decide to cancel this new transaction, you may do so by notifying us in writing at WORLD SAVINGS, FINAL DOCUMENTATION, ATTN:
...ERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #367, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210)
...-4293. (No other office or representative of World Savings is authorized to accept your written notice to cancel.)

... may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing
...ow. Keep one copy of this notice because it contains important information about your rights.

...ou cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 13, 2007 (or midnight of the
...d business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way,
...ust be delivered to the above address no later than that time.

**CANCELLING THIS TRANSACTION.  SEE ATTACHED.  INCORRECT  INCORRECT ACCT. NUMBERS, NOTARY
~~O~~ INCORRECT, ETC., ETC.  UNABLE TO RESOLVE BY PHONE.
~~SH TO CANCEL~~ (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)  DOCUMENTS PERTAINING TO
~~ETAIN~~ THE JULY 2005 3 0% INCONSISTENT SET OF FIGURES CONFUSION #1 1
...ustomer's Signature _____ ... FIXED RATE LOAN. SO CLOSE IN 20 DAYS.
@ attached.** _____ 3-05-07

...se contact the Closing Agent if you decide to cancel.

## ACKNOWLEDGEMENT OF RECEIPT OF COPIES.

...Y MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and
...turn to World).

...nsumer's Signature _Rosie Torres_  Date 2-05-07

ROSIE TORRES

...operty Address:  3546 W BEACH AVENUE
CHICAGO, IL 60651-2201

...ease return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

EX. 7-A

4-C, Pg 3

**WINGS**  NOTICE OF RIGHT TO CANCEL
(LENDER CURRENTLY HAS A LOAN ON THE PROPERTY)

FILED -1

2017 NOV 27 AM 10:04

CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CHANCERY DIV.

DOROTHY BROWN    CLERK

**TO CANCEL**

...a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction.
...right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events

...f this new transaction, which is February 7, 2007; or

...you received your new Truth-in-Lending disclosures; or

...you received this notice of your right to cancel.

...this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days
...give your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure
...of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

...eep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the
...to address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

...of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

**TO CANCEL**

...ide to cancel this new transaction, you may do so by notifying us in writing at: **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN:
...ING SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #367, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210)**
...(No other office or representative of World Savings is authorized to accept your written notice to cancel.)

...use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing
...ep one copy of this notice because it contains important information about your rights.

...cel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 10, 2007 (or midnight of the
...ness day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way,
...delivered to the above address no later than that time.

**...NCELLING THIS TRANSACTION    SEE ATTACHED EXPLANATION. 0045238888 NOT AGREED TO.**

**...T TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL) HAVE ALREADY WAIVED RIGHTS
...STABLE LOAN HAS INCONSISTENT SET OF FIGURES, INCORRECT INT & ACCT. NOS.**
...er's Signature _____  Date _2-08-07_

...contact the Closing Agent if you decide to cancel.

---

**ACKNOWLEDGEMENT OF RECEIPT OF COPIES**

...MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and
...n to World)

...rower's Signature   Date ▶ 2-08-07
             NOEL TORRES

...rty Address    3546 W BEACH AVENUE
                CHICAGO, IL  60651-2201

...and return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies

NON-BORROWING OWNER



pg. 4

Rosee Torres   CANCELLATION -   Loan No. 0045206156          February 8, 2007

FILED -1

17017 NOV 27 JUN 14

CIRCUIT COURT

DOROTHY

1.      Please review this cancellation, which by your own document, gives twenty (20) days to finalize. You promised to send by February 7, 2007, corrections on the multitude of documents, account numbers, contradictions and inconsistencies which falsely appear as a multitude of separate loans. Even the cover sheet has incorrect account number. Ex. a, b

2.      **First**, according to your January 30, 2007 documents I executed and already sent back to you, receiving a confirmation letter of February 7, 2007 which makes this matter is closed and finalized. However, those mysterious new loan nos. amounts, etc. must be corrected.  Ex, c

3.      **Second**, your February 1, 2007 Pick-A-Payment document <u>has the incorrect loan number of 0045238888</u>. Ex. d [I have only <u>ONE</u> loan. Is there a customer mix-up?]

4.      **Third**, your February 1, 2007 Pick-A-Payment document <u>has the incorrect amount of $212,000 as the amount requested</u>. Ex. d

5.      **Fourth**, your February 1, 2007 Pick a Payment Loan document is incorrect, as this is a not an adjustable loan, but a fixed principal and interest loan. This cancellation applies to all other adjustable loan, erroneous accounts, including Acknowledgement. Ex. d -F

6.      **Fifth**, your February 1, 2007 Pick-A-Payment document with monthly payment amount of $778.31 is incorrect, as your February 7, 2007 confirmation both faxed and is being mailed to me already stating $756.28 as the monthly payment commencing April 1, 2007. Ex. d

7.      **Sixth**, your January 28, 2007 Pick a Payment Loan request is cancelled for the same reasons: the amount requested of $208,000 is incorrect; the monthly payment of $766.20 is incorrect and both are inconsistent with the January 30, 2007 documents I executed and sent your office after which I received a faxed confirmation letter of February 7, 2007. Ex. e

8.      **Seventh**, your February 1, 2007 Truth in Lending Statement Disclosure has the incorrect and unacceptable annual percentage rate of 7.635%. it should be 3.9%. My current annual rate is only 5.2%, so why would I apply for a higher rate loan? (Please review my last loan with you on the prior 11-16-04 disclosure attached hereto. Ex. k) Also, the account number is incorrect (0045238888). Am I mixed up with someone else? Ex. g, h

9.      **Eighth**, your February 1, 2007 Truth in Lending Statement Disclosure has an incorrect and unacceptable finance charge of $436,384.08. Ridiculous. The fair market value of the property is less than a third of that. So I am awaiting an explanation as to how you arrived at your figures? Again, please review my prior 11-16-04 disclosure of only $80,957.95, attached hereto. The account number on this Disclosure is incorrect also (0045238888) Ex. g, h

10.     **Ninth**, your February 1, 2007 Truth in Lending Statement Disclosure has the incorrect amount to be financed. as $209,837.08. Take a look at the closing statement attached hereto. The amount is $175,000. Also, take a look at the prior 11/16/04 Truth in Lending Statement, indicating only $171,342.00 Ex. g, h

11.     **Tenth**, your 2nd February 1, 2007 Truth in ... g Statement Disclosure has the incorrect, exorbitant amount as to total payments being $6... i... an even more ridiculous

C 170-17

C 446

C 777-78

Rosee Torres   CANCELLATION –   Loan No. 0045208556   February 05 2007

amount which is not acceptable. The entire property is valued at less than 1/4 of that. Again, take a look at the prior 11-16-04 Truth in Lending Statement, indicating only total payments of $252, 299.95. I'm trying to do better, not worse. With all the incorrect figures and account numbers, investigate the competency of your office and whether you have the right customer. Ex. h, k. .

The January 30, 2007 Truth in Lending Statement is equally disastrous and one which I am awaiting an answer to my many questions, or at least a written explanation as to other accounts not mine, as no. 0045238558.

12.   **Eleventh.**   Your January 30, 2007 Truth in Lending Statement which has already been disputed and has the incorrect and unacceptable amount as to annual percentage interest rate of 7.037%, should be 3.9%. Please take a look at the prior 11-16-04 Truth in Lending Statement indicating my current interest rate as only 5.02%. You induced me into this loan to do better, which is why I am holding you to that 3.9% interest in the July 2005 agreement. Ex. i, k

13.   **Twelfth.**   Your January 30, 2007 Truth in Lending statement, already disputed has the incorrect and unacceptable, totally ridiculous finance charge of $343,433.24 when my current charge is only $80,957.95, per the 11-16-04 Truth in Lending loan, attached. Ex. i, k

14.-   **Thirteenth.**   Your January 30, 2007 Truth in Lending Statement, already disputed, is incorrect and unacceptable, again totally ridiculous amount financed as $203,692.90. I request an explanation as to how you arrived at this figure when the entire house has a fair market value of 2/3 that. See 11-16-04 Truth in Lending Statement attached which indicates only $171,342.00. The closing statements indicate $175,000. Please review this contradiction. Ex. i, k.

15.   **Fourteenth.**   Your January 30, 2007 Truth in Lending Statement, already disputed, is incorrect and unacceptable. Total of Payments being a ridiculous $567,181.14. I request explanation as to how you arrived at this figure, when the whole house has a fair market value of far less than that, perhaps one-fourth (1/4) that amount. Ex. i, k

16.   **Fifteenth.**   Your February 1, 2007 Deferred Interest Acknowledgement is also rejected because of incorrect account no. 0045218588. This is not signed or initialed. Remaining pages/package returned to you. Ex. j [A 3rd set of documents with incorrect acct. returned.]

17.   **Sixteenth.**   The appraisal report is grossly inflated. Please send a copy.

18.   **Seventeenth.**   The settlement includes costs and expenses as insurance and scrow (taxes?) which are paid by me. Please adjust and correct these added costs.

According to your Notice of Right to Cancel Refinancing and Truth in Lending Act you have twenty (20) days from February 7, 2007 to respond to what I call negligent, incompetent piece of work by your staff. Otherwise, I will make the monthly payments of $756.28 on a fixed principal and interest loan and make every effort to enforce the 3.9% interest rate promised on July 5, 2005 to which we agreed, and which induced me into a new loan in the first place. An explanation as to all the above is also requested. Also, I need one person to whom I can speak or correspond or communicate at World. Your letters have no names or identities of persons, and Customer Service reps do not reveal their identity. Each one has a different explanation. Please do not bombard me with anymore insulting and ridiculously outrageous figures. Just make the corrections on the inconsistencies and contradictions. Thank you

Rosee Torres

– Pg. 2

"OFFICIAL SEAL"
MARIA T. GAUD

Subscribed and Sworn to before Me

day of Feb 2007.

Notary Public

...and to increase the amount of credit previously provided to you. Your home is the security for this new transaction.

...under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events

...new transaction, which is February 7, 2007; or

...received your new Truth-in-Lending disclosures; or

...you received this notice of your right to cancel.

**FILED - 1**

**2017 NOV 27 AM 10:14**

CIRCUIT COURT
COUNT ....
CHANCERY DIV

DOROTHY BROWN

...cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days ...we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure ...increase of credit. We must also return any money or property you have given to us or to anyone else in connection with this new transaction.

...may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the ...ney at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

...owner of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

## HOW TO CANCEL

...decide to cancel this new transaction, you may do so by notifying us in writing at WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: ...ERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) ...-1293. (No other office or representative of World Savings is authorized to accept your written notice to cancel.)

...may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing ...w. Keep one copy of this notice because it contains important information about your rights.

...cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 10, 2007 (or midnight of the ...d business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, ...ust be delivered to the above address no later than that time.

**CANCELLING THIS TRANSACTION SEE ATTACHED. INCORRECT ACCT. NUMBERS, NOTARY IS INCORRECT, ETC., ETC. UNABLE TO RESOLVE BY PHONE. ...SH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL) DOCUMENTS PERTAINING TO ...TAIN THE JULY 2005 3.9% INCONSISTENT SET OF FIGURES CONFUSION !!!** _Rosee Torres_ INTEREST FIXED RATE LOAN. SO CLOSE IN 20 DAYS. ...e attached. _2-08-07_

...se contact the Closing Agent if you decide to cancel.

## ACKNOWLEDGEMENTS OF RECEIPT OF COPIES

...Y MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and ...turn to Work).

...nsumer's Signature _Rosee Torres_        Date _2 - of - 07_

ROSEE TORRES

...perty Address:    3546 W BEACH AVENUE
CHICAGO, IL   60651-2201

...ase return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies

4G, Pg.3

...transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction.

...under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events...

...transaction, which is February 7, 2007; or

...received your new Truth-in-Lending disclosures; or

...you received this notice of your right to cancel.

**FILED ~1**

**2019 NOV 27 AM 10:14**

CIRCUIT CO[
COUNTY
CHANCERY DIV
DOROTHY BROWN

...cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days ...we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure ...increase of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

...u may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the ...ney at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

...owner of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

## HOW TO CANCEL

...ou decide to cancel this new transaction, you may do so by notifying us in writing at WORLD SAVINGS, FINAL DOCUMENTATION, ATTE:
...ERATIONS SUPPORT DEPARTMENT, 6101 WISEMAN BOULEVARD, BUILDING #307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) ...-1292. (No other office or representative of World Savings is authorized to accept your written notice to cancel.)

...u may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing ...w. Keep one copy of this notice because it contains important information about your rights.

...u cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 18, 2007 (or midnight of the ...d business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, ...ust be delivered to the above address no later than that time.

**CANCELLING THIS TRANSACTION SEE ATTACHED. INCORRECT ACCT. NUMBERS, NOTARY ...FO INCORRECT, ETC., ETC. UNABLE TO RESOLVE BY PHONE. ...ISH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL) DOCUMENTS PERTAINING TO ...JUSTABLE RATE LOANS WITH FIVE (5) INCONSISTENT SET OF FIGURES CONFUSION !!! ...TAIN THE JULY 2005 5% INTEREST FIXED RATE LOAN SO CLOSE IN 20 DAYS.**

Owner's Signature _____ Date 2-05-07

e attached.

...se contact the Closing Agent if you decide to cancel.

## ACKNOWLEDGEMENT OF RECEIPT OF COPIES

...Y BY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and ...turn to World).

Consumer's Signature _____ ROSEE TORRES

Date: 2-05-07

...perty Address: 3546 W BEACH AVENUE
CHICAGO, IL 60651-2201

...ase return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

...2001-03-3
...S REDUCTION       ...COPY RETURN SIGNED TO LENDER    2 COPIES

LENDER'S USE ONLY

4-C, Pg.3

FILED -1

2007 NOV 27 AM 10:24

CIRCUIT COUR
COUNTY
CHANCERY

DOROTHY BROWN    CLE

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of ~~California~~ Illinois

County of Cook

On February 8, 2007 before me, Marie Warnsby
      DATE                          NAME, TITLE OF OFFICER

personally appeared    Noel Torres
                            NAME(S) OF SIGNER(S)

☐ Personally known to me   OR ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

"OFFICIAL SEAL"
MARIE WARNSBY
Notary Public, State of Illinois
My Commission Expires 09/23/09

WITNESS my hand and official seal

_Marie Warnsby_
SIGNATURE OF NOTARY

### OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form

CAPACITY CLAIMED BY SIGNED          DESCRIPTION OF ATTACHED DOCUMENT

☐ INDIVIDUAL
☐ CORPORATE OFFICER
                                          TITLE OR TYPE OF DOCUMENT
        TITLE(S)
☐ PARTNER(S)    ☐ LIMITED
                ☐ GENERAL
                                          NUMBER OF PAGES
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
                                          DATE OF DOCUMENT
☐ GUARDIAN/CONSERVATOR
☐ OTHER

                                          SIGNER(S) OTHER THAN NAMED ABOVE

SIGNER IS REPRESENTING

P. 4

8

Recording Requested By
GWSA, TRUSTEE FOR WORLD SAVINGS

When Recorded Return To
GOLDEN WEST SAVINGS ASSOC
TRUSTEE FOR WORLD SAVINGS
P O BOX 34957
San Antonio, TX 78265-4957



MEMO - 1

2007 MAR 27

CIRCUIT COURT
COUNTY
CHANCERY DIV

DOROTHY BROWN CLER

Doc#: 0708010016 Fee: $28.50
Eugene "Gene" Moore RHSP Fee $10.00
Cook County Recorder of Deeds
Date: 03/21/2007 09:56 AM Pg 1 of 3

## SATISFACTION

Golden West Savings Association Service Co # 27025794 "TORRES" Loan# ID 010036  Cook, Illinois PIF 02/16/2007

**FOR THE PROTECTION OF THE OWNER, THIS RELEASE SHALL BE FILED WITH THE RECORDER OR THE REGISTRAR OF TITLES IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.**

KNOW ALL MEN BY THESE PRESENTS that WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK holder of a certain mortgage, made and executed by ROSEE TORRES, A MARRIED WOMAN, originally to WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, in the County of Cook, and the State of Illinois, Dated 11/19/2004 Recorded 11/29/2004 as Instrument No 0433441149, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said mortgage

Legal: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

Assessor's/Tax ID No 16-02-208-030-0000

Property Address  3546 W  BEACH AVE, CHICAGO, IL 60651

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument

WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK
On March 1st, 2007.

By _____
TRACEY WRIGHT, Assistant Vice-President

STATE OF TEXAS
COUNTY OF Bexar

On March 1st  2007, before me, JUAN G. IMPERIAL, a Notary Public in and for Bexar in the State of Texas, personally appeared TRACEY WRIGHT, Assistant Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

JUAN G IMPERIAL
Notary Expires: 09/14/2008

JUAN G. IMPERIAL
MY COMMISSION EXPIRES
September 14, 2008

(This area for notarial seal)

C 377
C 430

"URN#URNGOLD*03/01/2007 11 11 16 AM* GOLDEN#GOLDENN00X00X000X00R002172" ILCOOK" 27025794 ILSTATE_MORT_REL "M#RM#RM#GOLD"

## EX. 8

WFTOR0003150

9

**E-filed 5/17/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE WACHOVIA CORPORATION "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION.

Case No. 5:09-md-02015-JF

JUDGMENT

The Court having granted final approval of the class action settlement,

The action is HEREBY DISMISSED WITH PREJUDICE.

DATED: 5/17/2011



JEREMY FOGEL
United States District Judge

E19

10



October 7, 2011

Pick-a-Payment ___ strator
PO Box 2
Faribau

IMP ___ NT DOCUMENT ENCLOSED

SINGLE-PIECE
ROSEE TORRES
3546 N BEACH AVE
CHICAGO IL 60651-2201

*Re: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION*
*Case No.: M:09-CV-2015-JF*

The check below represents your settlement payment from the Wachovia Corp. "Pick-a-Payment" Settlement. Your payment wa
calculated according to the terms of the Settlement Agreement. If you have questions about the potential tax consequences o
your award, we recommend that you contact your tax advisor. If you have any questions regarding the information in this lette
please visit the Settlement website at http:// www.pickapaymentsettlement.com or send your questions along with a copy of thi
letter to: Pick-a-Payment Settlement Administrator, PO Box 2448, Faribault, MN 55021-9148.

PLEASE CASH THIS CHECK IMMEDIATELY. If your check is not cashed within ninety (90) days from the date on the check,
will become null and void and your right to receive the class settlement payment will be lost.

Sincerely,

Pick-a-Payment Settlement Administrator

EX.10



Illinois Attorney General - ATTORNEY GENERAL MADIGAN REACHES $575 MILLION SE...



Home • Privacy Policy • Contact Us
Press Releases

© 2018 Illinois Attorney General

December 28, 2018

## ATTORNEY GENERAL MADIGAN REACHES $575 MILLION SETTLEMENT WITH WELLS FARGO

### Settlement Resolves Consumer Protection Claims for Unauthorized Accounts, Other Alleged Unfair Trade Practices

**Chicago** — Attorney General Lisa Madigan today announced that Wells Fargo Bank N.A. will pay $575 million to resolve claims that the bank violated state consumer protection laws by (1) opening millions of unauthorized accounts and enrolling customers into online banking services without their knowledge or consent, (2) improperly referring customers for enrollment in third-party renters and life insurance policies, (3) improperly charging auto loan customers for duplicative force-placed insurance, (4) failing to ensure that customers received refunds of unearned premiums on certain optional auto finance products, and (5) incorrectly charging customers for mortgage rate lock extension fees. Illinois will receive over $10.8 million of the settlement.

"Wells Fargo hit a new low when it completely deceived its customers to turn a profit," Madigan said. "Today's settlement ensures Wells Fargo can no longer breach consumers' trust and get away with it."

Through this settlement with 50 states and the District of Columbia, Wells Fargo will also create a consumer redress review program through which consumers who have not been made whole through other restitution programs already in place can seek review of their inquiry or complaint by a bank escalation team for possible relief. To date, this settlement represents the most significant engagement involving a national bank by state attorneys general acting without a federal law enforcement partner.

Wells Fargo has identified more than 3.5 million accounts where customer accounts were opened, funds were transferred, credit card applications were filed, and debit cards were issued without the customers' knowledge or consent. The bank has also identified 528,000 online bill pay enrollments nationwide that may have resulted from improper sales practices at the bank. In addition, Wells Fargo improperly submitted more than 6,500 renters insurance and/or simplified term life insurance policy applications and payments from customer accounts without the customers' knowledge or consent.

Madigan and the other attorneys general alleged that Wells Fargo imposed aggressive and unrealistic sales goals on bank employees and implemented an incentive compensation program where employees could qualify for credit by selling certain products to customers. They further alleged that the bank's sales goals and the incentive compensation program created an impetus for employees to engage in improper sales practices in order to satisfy such sales goals and earn financial rewards. Those sales goals became increasingly harder to achieve over time, the states alleged, and employees who failed to meet them faced potential termination and career-hindering criticism from their supervisors.

Madigan and the other attorneys general also alleged that Wells Fargo improperly charged premiums, interest, and fees for force-placed collateral protection insurance to more than two million auto financing customers, despite evidence that the customers' regular auto insurance policy was in effect, and despite numerous customer complaints about such unnecessary placements. Wells Fargo has agreed to provide remediation of more than $385 million to approximately 850,000 auto finance customers. The remediation will include payments to over 51,000 customers whose cars were repossessed.

Additionally, Madigan and the other attorneys general alleged that Wells Fargo failed to ensure that customers received proper refunds of unearned portions of optional Guaranteed Asset/Auto Protection (GAP) products sold as part of motor vehicle financing agreements. As a result, the bank has agreed to provide refunds totaling more than $37 million to certain auto finance customers.

Finally, Madigan and the other attorneys general alleged that Wells Fargo improperly charged residential mortgage loan consumers for rate lock extension fees even when the delay was caused by Wells Fargo, a practice contrary to the bank's policy. Wells F<sup>...</sup> has identified and contacted affected consumers and has refunded or agreed to refund over $100 million of such fees.

EX. 11

Illinois Attorney General - ATTORNEY GENERAL MADIGAN REACHES $575 MILLION SETTLEMENT WITH WELLS FARGO

...lls Fargo has previously entered consent orders with federal authorities – including the Office of the Comptroller of the Currency ...OCC) and the Consumer Financial Protection Bureau (CFPB) – related to its alleged conduct. Wells Fargo has committed to or already provided restitution to consumers in excess of $600 million through its agreements with the OCC and CFPB as well as through settlement of a related consumer class-action lawsuit and will pay over $1 billion in civil penalties to the federal government. Additionally, under an order from the Federal Reserve, the bank is required to strengthen its corporate governance and controls, and is currently restricted from exceeding its total asset size.

As part of its settlement with the states, Wells Fargo has agreed to implement within 60 days a program through which consumers who believe they were affected by the bank's conduct, but fell outside the prior restitution programs, can contact Wells Fargo to be reviewed for potential redress. Wells Fargo will create and maintain a website for consumers to use to access the program and will provide periodic reports to the states about ongoing restitution efforts.

More information on the redress review program, including Wells Fargo escalation phone numbers and the Wells Fargo dedicated website address for the program will be available on or before February 26, 2019.

Acting Division Chief Susan Ellis and Assistant Attorneys General Greg Grzeskiewicz, Andrew Dougherty, Cassandra Halm, Cecilia Abundis and Sarah Poulimas handled the investigation and settlement for Madigan's Consumer Protection Division.

-30-

Return to December 2018 Press Releases


TOP